Andrew J. Ogilvie (SBN 57932)
Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP
445 Bush Street, 6th Floor
San Francisco, CA 94108
Ph: (415) 861-2265
Fax: (415) 861-3151
ajogil@kaboblaw.com

Robert S. Sola          *Pro hac vice*
Robert S. Sola, P.C.
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Ph: (503) 295-6880
Fax: (503) 291-9172
rssola@msn.com

Attorneys for Plaintiff Emelia M. Pasternak

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EMELIA M. PASTERNAK, | ) | Case No. 4:07-cv-04980 CW (BZ) |
| | ) | |
| Plaintiff, | ) | DECLARATION OF ANDREW J. |
| | ) | OGILVIE IN SUPPORT OF |
| v. | ) | PLAINTIFF'S OPPOSITION TO |
| | ) | CAPITAL ONE'S MOTION FOR |
| TRANS UNION, LLC, EXPERIAN | ) | PROTECTIVE ORDER AND FOR |
| INFORMATION SOLUTIONS, INC., | ) | ORDER QUASHING SUBPOENA |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| and CAPITAL ONE BANK, a national | ) | Date:       July 23, 2008 |
| association, | ) | Time:       10:00 am |
| | ) | Courtroom  G, 15th Floor |
| Defendants. | ) | |

I, Andrew J. Ogilvie, declare as follows:

1.    I am an attorney licensed to practice in California and admitted to practice before the United States District Court for the Northern District of California. I represent Emelia Pasternak, plaintiff in this action.

2.    I make this declaration in support of plaintiff's opposition to Capital One's motion for a protective order and for order quashing Ms Pasternak's subpoena.

3.    Emelia M. Pasternak is the victim of identity theft, twice. In 2003 Capital One received a credit card application from an imposter who was using an address at Gayley Avenue in Los Angeles and claiming to be Ms Pasternak. Capital One opened the account, extended $500 credit, discovered the fraud, closed the account and called Ms Pasternak to tell her to call Equifax and put a fraud alert on her credit file, which she did.

4.    A little more than a year later, Capital One opened a second account for an imposter who was using the same Gayley Avenue address and claiming to be Ms Pasternak. This time Capital One gave the imposter an account with $20,000 credit and enabled the imposter to drain that credit line by sending "convenience" checks with the account statements. The imposter used the "convenience" checks to withdraw $19,000. Then the imposter kept the scam going by sending in "payments" in the form of "convenience" checks stolen out of the mail from persons with names like Mike La, An Ly, Carlos Vega and William Powell, all at addresses that were different from the address on the account.

5.    When the stolen convenience checks of Messrs La, Ly, Vega and Powell bounced, Capital One sent this account to collection agencies. Eventually one of them found Ms Pasternak at her parents' address in Lafayette, California and she learned of the

fraudulent account when she received a dunning call. She filed a police report and promptly notified Capital One that she was the victim of identity theft. She provided it with a copy of her police report from the SF police department.

6. Capital One ignored Ms. Pasternak's notice of identity theft. When the file was returned to it by one collection agency, Capital One sent it to another. Ms Pasternak spent days notifying collection agncies that she was the victim of identity theft. The agencies quit hounding her, but Capital One was undeterred. When one agency returned the account, Capital One sent it out to another for more collection efforts. In 2007 it sent the account to Patenaude & Felix, its collection lawyers in southern California. Ms Pasternak told them that she was the victim of identity theft and that she had sent the police report to Capital One and its collection agencies numerous times. They ignored her and responded by filing a collection action in Contra Costa County Superior Court.

7. Several months after that action was filed, Ms Pasternak filed this lawsuit for violations of the FCRA and of California's identity theft statute. Capital One then dismissed its lawsuit in Contra Costa County.  Pasternak amended her complaint to add a malicious prosecution claim.

8. Around April 2008, I learned from other consumer attorneys (not Mr Trueblood) that Capital One was about to go to trial in Los Angeles on an identity theft and malicious prosecution case that also involved Patenaude & Felix. As I understood it, that case was similar to Ms Pasternak's case in that (i) Capital One had failed to investigate properly and (ii) it had used Patenaude & Felix to bring its action against the consumer. I asked Capital One's attorney about that case during the deposition of Ms

Pasternak in late May, 2008. She told me that the case had recently settled. I then called Mr Trueblood and asked if he had deposed employees of Capital One's fraud department and from Patenaude & Felix. He said they had, but he refused to divulge any information, including the name of the case, because he was bound by a protective order in that case. He told me that the protective order would require him to destroy the documents shortly unless I subpoenaed them.

9.    I decided to subpoena the depositions and discovery responses from Capital One and Patenaude & Felix because I have been having a very difficult time obtaining full and complete discovery responses from Capital One in this case and because I have depositions later this month in Virginia. I want the materials from *Valdez* so that prior to going to Virginia I and my co-counsel can familiarize ourselves with Capital Ones' organization, its fraud investigation practices and policies, and its relationship with Patenaude & Felix.

10.    I served document demands and interrogatories on Capital One in late December, 2007. In February Capital One served responses in which it objected to everything in General Objections and in individual objections. It said it had not completed its investigation. It asserted numerous privileges including the "self-critical analysis privilege" and "bank regulatory privilege" but did not provide a privilege log. I wrote a comprehensive 'meet & confer' letter trying to resolve discovery disputes without involving the Court. Capital One's lawyer responded with a letter in which she explained that "with a large company like Capital One, it takes time to obtain approval and identify relevant witnesses."

11.    In May 2008, Capital One supplemented its responses to some of plaintiff's interrogatories, but again stated that it had not completed its investigation or analysis. It identified just one investigator, a Kristi Glass Taggart. It refused to identify the persons who manage or supervise its fraud investigation department. It refuses to produce the documents that constitute the fraud investigation policies and procedures. It still has not provided a privilege log, yet it now asserts the affirmative defense of advice of counsel.

12.    After the conference call with the Court, I suggested that we resolve this by having Capital One designate the subpoenaed materials "confidential" pursuant to the protective order in this case. Capital One rejected that offer. I asked if counsel was familiar with the *Foltz* case. She was not.

13.    In my experience, motions to compel require a great deal of attorney time and expense. In an effort to manage the discovery economically, I decided to seek the information I need by using a subpoena rather than filing a motion. The only reason this is proving to be expensive and time consuming is because Capital One is seeking to prevent consumers' attorneys from sharing the fruits of their respective discovery efforts. That seems to conflict with Ninth Circuit law.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 14th day of July, 2008 at San Francisco, California.

/s/
_____
Andrew J. Ogilvie
