**United States District Court**
For the Northern District of California

1

2

3

IN THE UNITED STATES DISTRICT COURT

4

FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8

9

10

| EMELIA M. PASTERNAK, | No. C 07-04980 CW |
| | No. C 08-02972 CW |
| Plaintiff, | |
| | ORDER ON PARTIES' |
| v. | CROSS-MOTIONS FOR |
| | SUMMARY JUDGMENT |
| TRANS UNION LLC, et al., | |
| Defendants. | |
| _____/ | |

11    Plaintiff Emelia M. Pasternak filed a motion for summary

12 judgment.  Defendants Capital One Bank (Capital One) and Equifax

13 Information Services (Equifax) oppose the motion and each filed a

14 separate cross-motion for summary judgment.[1]  The motions were

15 heard on December 4, 2008.  Having considered all of the parties'

16 papers and argument on the motions, the Court hereby denies

17 Plaintiff's motion, grants in part Defendant Capital One's motion

18 and denies it in part, and denies Defendant Equifax's motion.

19                              BACKGROUND

20    Between 1998 and 1999, Plaintiff lived on Gayley Avenue in Los

21 Angeles, California, but has not lived there since.  Pasternak Dec.

22 (docket no. 30) ¶ 1.  In July, 2003, Capital One mailed a pre-

23 approved credit card application to Plaintiff at the Gayley Avenue

24 address.  Douglass Dep. 61-62, 65; Pasternak Dec., Ex. 45.  Someone

25 other than Plaintiff signed and submitted the application for

26 _____

27        [1]On November 11, 2008, Plaintiff notified the Court that she
reached tentative settlements with Defendants TransUnion, LLC and

28 Experian Information Solutions, Inc.  Therefore, Plaintiff's motion for
summary judgment against Experian is denied as moot (Docket No. 113).

credit in the name of "Emmy Pasternak." Douglass Dep. 69-70. Capital One received the application and opened an account (2003 Account) after verifying the application with information such as Plaintiff's "social security number, address and other identifiers," provided by credit bureaus. Douglass Dec. (docket no. 53) ¶ 7.

Within a few months of issuing the credit card, Capital One received a "lost/stolen report" from law enforcement informing it that professional identity thieves had opened this account and others. Douglass Dec. (docket no. 110) ¶ 5; Douglass Dep. 218-19. Capital One contacted Plaintiff about this account and Plaintiff cooperated in the fraud investigation. Douglass Dec. (docket no. 53) ¶ 7. Plaintiff verified her identity and confirmed that she did not open the account. Id. Capital One determined that this account was fraudulent and closed it. Id. Capital One then "blocked" the 2003 Account and notified all credit bureaus to delete the trade line. Id. Capital One noted that it "did not determine that the address or social security number for the 2003 Account were invalid." Id. However, Capital One removed Plaintiff's social security number and the Gayley Avenue address from the 2003 Account. Id. Ironically, Capital One did this "to prevent the 2003 Account from being updated on her credit file and reported periodically to the credit bureaus, and to prevent negative action on her future credit applications." Id.

On September 29, 2003, Plaintiff contacted Equifax through its Automated Fraud Line to request a temporary fraud alert on her credit file. Sapere Dec. ¶ 17. Equifax added the fraud alert, which remained on her credit file until March, 2004. Id.

**United States District Court**
For the Northern District of California

About one year after Capital One determined the 2003 Account to be fraudulent, Capital One mailed another pre-approved credit application addressed to Plaintiff at the Gayley Avenue address. Douglass Dep. 258-59. Capital One does not explain why it mailed a pre-approved credit application to the Gayley Avenue address after it removed her address in 2003 specifically to "prevent negative action on her future credit applications." Capital One received a signed credit application in October, 2004. Douglass Dec. (docket no. 53) ¶ 8. Capital One "matched first and last name and social security number from the application to information from all three bureaus and matched the address to one listed with two of the three bureaus." Douglass Dec. (docket no. 53) ¶ 8. Capital One then "sent a letter to the applicant to further confirm information and received confirmation." Id. Capital One did not describe what information was confirmed in this correspondence. Capital One then issued a credit card (2004 Account) to "Emmy Pasternak" at the Gayley Avenue address. Id. Plaintiff asserts that she did not complete an application, and that the first time she saw it was at a deposition in preparation for this case. Pasternak Dec. ¶ 2.

Plaintiff states that in "late 2005" she received a telephone call from a collection agency, during which the agency demanded that Plaintiff pay $17,500 on the 2004 Account. Pasternak Dec. ¶ 3. Plaintiff told the agency that she never opened the account and knew nothing about it. Id.; Pasternak Dep. 38. Then, on October 25, 2005 Plaintiff obtained a copy of her credit report online and learned that Capital One listed delinquent activity on the 2004 Account. Pasternak Dep. 38. A few weeks later, Plaintiff filed a police report stating that the 2004 Account was fraudulent.

Pasternak Dep. 38; Kuiumdjian Dec., Ex. D.

Capital One claims it first learned that the 2004 Account might be fraudulent on December 22, 2005, when it attempted to contact Emmy Pasternak to inquire about the status of payment on the account. Douglass Dec. (docket no. 110) ¶ 8. Capital One alleges that it spoke to "an individual who said her name was Emmy Pasternak but who declined to provide identifying information to confirm her identity." Id. In this conversation, the individual told Capital One that she filed a police report and that she did not have a Capital One credit card. Id. In the ensuing week, Capital One claims to have called and left messages for Pasternak four times, but those calls were not returned. Id.

In January, 2006, Jeremy Pasternak, Plaintiff's brother and lawyer, called Capital One, but Capital One would not speak to him without Plaintiff's authorization. Ogilvie Dec., Ex. 212. Mr. Pasternak complied with Capital One's requirement and faxed over the authorization. Id., Ex. 219. However, Capital One claims never to have received this authorization. Douglass Dec. ¶ 9.

Towards the end of February, 2006, Capital One sent the 2004 Account to OSI Collection Services, a collection agency. Id. at ¶ 10. OSI then sent Plaintiff a letter requesting payment on the 2004 Account. Id. Mr. Pasternak notified OSI that Plaintiff was disputing the 2004 Account as fraudulent. Id. Upon learning this, OSI terminated its collection efforts and returned the account to Capital One. Id. Mr. Pasternak faxed Capital One a letter on March 30, 2006 that explained that Plaintiff was the victim of identity theft and that all future correspondence about the matter should be directed to him. Ogilvie Dec., Ex. 220. Mr. Pasternak

also attached a copy of the police report to this fax.   <u>Id.</u>

Two months later, on June 14, 2006, Capital One sent Plaintiff a letter requesting that she contact Capital One.   Douglass Dec., Ex. 4.   On June 21, Mr. Pasternak called Capital One to discuss the 2004 Account but was told that Capital One would need written authorization from Plaintiff before it could discuss the account with him.   Douglass Dec. ¶ 12.   As noted above, Capital One claimed that it had not received Plaintiff's earlier authorization. Nevertheless, on June 23, 2006, Mr. Pasternak faxed another letter to Capital One in which Plaintiff confirmed Mr. Pasternak's authority to speak on her behalf as her lawyer.   Douglass Dec., Ex. 5.

In the beginning of July, 2006, Capital One again referred the 2004 Account to a collection agency.   Douglass Dep. 506.   The agency terminated its efforts and returned the account to Capital One on July 27, 2006 because the agency concluded that this might be a fraudulent account.   <u>Id.</u> at 507.   For the remainder of 2006, Capital One did not take any action investigating the 2004 Account. <u>Id.</u> at 509-510.

Throughout January, 2007, Plaintiff received more dunning telephone calls and letters about the 2004 Account.   Pasternak Dec. (docket no. 126) ¶ 8.   In early February, 2007, Plaintiff again sent Capital One the police report about the 2004 Account along with letters stating that the 2004 Account was fraudulent.   <u>Id.</u>   On February 28, 2007, Capital One wrote Plaintiff to acknowledge receipt of her letter and to request that she contact Capital One. Douglass Dec. (docket no. 110) ¶ 14, Ex. 7.   Capital One did not receive a telephone call in response to this letter.   <u>Id.</u> at ¶ 15.

5

At this point, Capital One initiated a fraud investigation. On March 21, 2007, Capital One investigator Kristi Glass began her efforts to determine whether the 2004 Account was fraudulent. <u>Id.</u> In her investigation, Ms. Glass noted that the signature on the application did not match other signatures in the file. Glass Dep. at 63. Ms. Glass then noted that payments on the account came from multiple people. <u>Id.</u> at 64-65. Ms. Glass commented that if Plaintiff had made payment from her own account, "that would be a major indicator that it was not fraud." <u>Id.</u> at 65. Ms. Glass also noted that she needed confirmation of where Plaintiff was living at the time the 2004 Account was opened. <u>Id.</u> at 68. Ms. Glass then called Mr. Pasternak and left a message for him to return her call. <u>Id.</u> at 69-71. Neither Mr. Pasternak nor Plaintiff returned Ms. Glass's telephone call, and on May 15, 2007, Ms. Glass determined that the claim of fraud was invalid. <u>Id.</u> at 73-74.

In March, 2007, two months before Ms. Glass's determination, Capital One had sent the 2004 Account information to the law firm of Patenaude & Felix to determine whether to file a collection action. Patenaude Dec. ¶ 4. On May 21, 2007, Capital One sued Plaintiff in Contra Costa Superior Court to collect on the debt accrued from the 2004 Account. <u>Capital One Bank v. Emmy Pasternak</u>, Case No. L07-03088. On June 14, 2007, three weeks after Capital One filed the suit, it requested that Plaintiff supply it with a copy of the police report, an Affidavit of Identity Theft, a copy of her driver's license and a sample of her signature. Ogilvie Dec., Ex. 71. This letter marked the first time Capital One asked Plaintiff to submit an affidavit attesting to the identity theft. Jeremy Pasternak Dec. ¶ 7.

On September 25, 2007, Plaintiff filed an answer to the complaint. Plaintiff's attorney, Mr. Pasternak, attempted to file a cross-complaint at the same time, but asserts that his process-serving company, One Legal, only filed the answer and not the cross-complaint. Jeremy Pasternak Dec. ¶ 8; Ogilvie Dec., Ex. 262. However, copies of both the answer and cross-complaint were timely mailed to Capital One's counsel. Ogilvie Dec., Ex. 261, 262.

On September 26, 2007, Plaintiff filed a lawsuit in this Court, charging Capital One and the other Defendants with violating the Fair Credit Reporting Act (FCRA) and the California Identity Theft Law, and malicious prosecution. Case No. C 07-04980. On October 19, 2007, Capital One dismissed without prejudice its collection action filed in Contra Costa County.

In March, 2008, Capital One contacted the credit reporting agencies (CRA)[2] and requested and received a consumer report on Plaintiff, allegedly for the purposes of an account review. Douglass Dep. 195-196.

After some initial discovery, Plaintiff asked Capital One to stipulate to an amended complaint in the 2007 federal case. Capital One refused. The deadline to amend the 2007 complaint had not passed but, rather than moving for leave to amend and supplement the complaint, on June 16, 2008, Plaintiff filed the 2008 complaint, Case No. C 08-02972, charging Capital One and Equifax with negligently and willfully violating the FCRA by obtaining Plaintiff's credit report in 2004 and 2008 without a permissible purpose. Capital One moved to dismiss the 2008

---

[2]The credit reporting agencies are Trans Union, Equifax, and Experian.

7

complaint against it asserting that it was an improper attempt to split claims.  On September 30, 2008, the Court denied Capital One's motion to dismiss.  Docket No. 27.

Now, Plaintiff moves for summary judgment against Capital One and Equifax on some of the claims in her 2008 complaint, and Capital One and Equifax move for summary judgment against Plaintiff on all of her claims in the 2007 and 2008 complaints.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

United States District Court
For the Northern District of California

(1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

**United States District Court**
For the Northern District of California

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id. Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." Id.

DISCUSSION

I.   Fair Credit Reporting Act: 15 U.S.C. § 1681

     A.   Plaintiff's Claims Against Capital One

Plaintiff's 2007 and 2008 complaints allege that Capital One violated several provisions of the FCRA, 15 U.S.C. § 1681. However, Plaintiff moves for summary judgment against Capital One only for negligent and willful violations of § 1681b(f).

          1.   Permissible Purpose: 15 U.S.C. § 1681b(f)

Plaintiff moves for summary judgment against Capital One asserting that there is no genuine issue of any material fact that

10

Capital One violated 15 U.S.C. § 1681b(f) when it reviewed her account in March, 2008.  That subsection states, "A person shall not use or obtain a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."  Under § 1681b(a)(3)(A), Capital One may permissibly obtain a credit report if it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."  Plaintiff argues that Capital One violated § 1681b(f) by obtaining her credit report in March, 2008 without a permissible purpose.  Plaintiff asserts that Capital One knew Plaintiff did not have a Capital One account, and therefore there was no valid reason to access her credit report for an account review.

     Plaintiff's motion for summary judgment on this claim fails because she did not carry her burden to show that there are no genuine issues of material fact.  Plaintiff makes many material factual assertions without the proper evidentiary support.  For example, Plaintiff asserts that Capital One "determined that plaintiff was not responsible for the 2004 account."  However, Capital One disputes this assertion.  Capital One claims that, even though it dismissed its case without prejudice against Plaintiff for collection on the 2004 Account, it did so for business reasons, not because it acknowledged the fraudulent nature of the 2004 Account.  Napolitano Dec. ¶¶ 5-6.  Capital One also challenges Plaintiff's assertion that "in August 2007 Capital One had deleted that account from its credit reporting records."  Capital One does

11

not dispute that it stopped reporting this account to the credit reporting agencies, but Capital One maintains that it had not deleted the account from its internal records as of March, 2008. Douglass Dec. ¶¶ 5, 20.  The existence and status of the 2004 Account are factual issues to be resolved at trial.  Plaintiff has not carried her burden to show that the March, 2008 review was not for a permissible purpose.[3]

On the same issue, Defendant Capital One moves for summary judgment with respect to the March, 2008 Account review as well. However, Capital One has not carried its burden either.  Capital One contends that its account review was permissible because, even though Capital One had ceased collection efforts on the 2004 Account by March, 2008, an account still existed in Capital One records at that time, and an existing account is subject to a review.  Capital One has not shown that, as a matter of law, reviewing the 2004 Account in March, 2008 was permissible, merely because Capital One did not delete it from its own records.  The documents submitted to the Court do not establish that Capital One should have maintained an account for Plaintiff in the first place, given her repeated efforts to notify Capital One that the 2004 Account was fraudulent.  And, if maintaining the account was impermissible, then the periodic review would be impermissible as well.  Thus, there is a triable issue of fact as to whether the March, 2008 review of Plaintiff's 2004 Account was permissible.

Capital One also moves for summary judgment on Plaintiff's

---

[3]The Court also denies Plaintiff's motion for summary judgment on her claim that Capital One committed a "willful" violation of § 1681b(f) because the "willful" standard requires a more culpable mental state than the negligence standard.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

claim that it did not have a permissible purpose for accessing her credit report on October 6, 2004.  Capital One argues that this claim is barred by the statute of limitations.  Under 15 U.S.C. § 1681p, a plaintiff must bring an action not later than "two years after the date of discovery by the plaintiff of the violation that is the basis for such liability."  Plaintiff first included this claim in the suit she filed on June 16, 2008, Case No. C 08-02972.  Capital One asserts that Plaintiff discovered the alleged violation as early as October 25, 2005.  On this date, Plaintiff accessed her credit report to investigate why she was receiving phone calls about non-payment on the 2004 Account.  A few weeks after accessing this report, Plaintiff filed a police report claiming the 2004 Account was fraudulent.  Plaintiff responds that, even though she accessed this report on October 25, 2005, she did not "discover" Capital One's § 1681 violation until May, 2007, when Capital One produced documents relating to the 2003 Account.  Plaintiff explains that, from this document production, she learned that a pre-approved credit application was mailed to her previous Gayley Avenue address in 2004, even after the 2003 Account, which also originated from the Gayley Avenue address, was determined to be fraudulent.  Thus, it was at this point that Plaintiff discovered the alleged § 1681 violation because this is when she learned Capital One should not have opened the 2004 Account.  The Court concludes that there is a triable issue of fact as to when Plaintiff discovered Capital One's § 1681 violation.

In the alternative, Capital One argues that it had a permissible purpose to access Plaintiff's credit report on October 6, 2004.  Capital One asserts that it reasonably believed it was

13

handling a credit application from Plaintiff when it accessed her report because the first and last name and social security number matched with all three credit bureaus, and the application address matched with two of the three credit reporting bureaus. Capital One also mailed the applicant a letter further to confirm that the application originated from someone at that address. After the applicant responded to the letter, Capital One issued a credit card to "Emmy Pasternak" at the Gayley Avenue address.

Capital One asserts that even if it made a mistake in concluding that Plaintiff initiated the credit application, this mistake does not support a § 1681b violation. See Trikas v. Universal Card Servs. Corp., 351 F. Supp. 2d 37, 41-43 (E.D.N.Y. 2005). However, Capital One made many mistakes in this case. To its credit, Capital One closed the 2003 Account that originated from the Gayley Avenue address after it learned that the account was fraudulent. Capital One then claims it blocked the 2003 Account and removed the Gayley Avenue address. However, one year later, Capital One mailed another pre-approved credit application to Plaintiff at the old Gayley Avenue address. Why would Capital One send Plaintiff a pre-approved credit application to an old address that was removed from its records? Not only an old address, but an old address that, one year ago, was the target of identity theft? The fact that Capital One checked the name and social security number on the 2004 application does not make Capital One's actions reasonable. Capital One claims to have further verified the applicant's identification through another letter, but a response to that letter could not verify that the real Emmy Pasternak resided at that address. Thus, there is a

**United States District Court**
For the Northern District of California

genuine issue as to whether Capital One acted with a permissible purpose when it accessed Plaintiff's credit report in October, 2004.

Capital One also moves for summary judgment on Plaintiff's claim under 15 U.S.C. § 1681q.  This statute provides, "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than two years, or both." Plaintiff claims that Capital One obtained her credit report as a "convenient but illegal way to investigate" her in this litigation. However, Plaintiff has not presented any evidence to support this statement or any other evidence that supports the claim that Capital One obtained Plaintiff's credit report under "false pretenses."  Therefore, the Court grants Capital One's summary judgment motion on this claim.

B.   Equifax

Plaintiff's 2007 and 2008 complaints allege that Equifax violated several provisions of 15 U.S.C. § 1681.  However, Plaintiff moves for summary judgment against Equifax for alleged violations only of §§ 1681b(a) and 1681e(a).  Equifax cross-moves for summary judgment against Plaintiff on all claims.

1.   Furnishing Report and Reasonable Procedures:
15 U.S.C. § 1681b(a) and 1681e(a)

As noted above, under 15 U.S.C. § 1681b(a)(3)(A), Equifax may not provide Capital One a credit report unless it believes that Capital One "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or the

United States District Court
For the Northern District of California

review or collection of an account of, the consumer."  Further,
Equifax may not give out Plaintiff's credit report "if it has
reasonable grounds for believing that the consumer report will not
be used for a purpose listed in section 1681b of this title."  15
U.S.C. § 1681e(a).  Finally, under § 1681e(b), whenever Equifax
prepares a credit report "it shall follow reasonable procedures to
assure maximum possible accuracy of the information concerning the
individual about whom the report relates."

Plaintiff asserts that Equifax violated these statutes when it
allowed Capital One to access Plaintiff's credit report for an
account review in March, 2008.  Plaintiff does not identify the
evidentiary support needed to sustain her summary judgment motion.
Therefore, the Court denies Plaintiff's motion for summary judgment
against Equifax.[4]

2.   Statute of Limitations

Equifax argues that the claims in Case No. C 07-04980 arising
from issuing a credit report in October, 2004 are time-barred by
the two year statute of limitations.  See 15 U.S.C. § 1681p.  As
noted above, the two year statute of limitations in § 1681p begins
to run on "the date of discovery by the plaintiff of the violation
that is the basis for such liability."  Plaintiff's initial
complaint against Equifax was filed on September 26, 2007.
However, Equifax does not point to any evidence in the record that
shows Plaintiff discovered this violation before September 26,

---

[4]The Court also denies Plaintiff's motion for summary judgment
on her claim that Equifax committed a "willful" violation of
§ 1681b(f) because the "willful" standard requires a more culpable
mental state than the negligence standard for violating § 1681b(f).

2005.  Further, Plaintiff argues that she did not "discover" the "violation that is the basis for such liability" until May, 2007 at the earliest.  The Court concludes that there is a triable issue of fact as to when Plaintiff discovered Equifax's § 1681 violation.

Equifax next argues that Plaintiff cannot establish Equifax's liability for violating any section of the FCRA.

> 3.   Inaccurate Information: 15 U.S.C. § 1681e(b)

Equifax first argues that Plaintiff's § 1681e(b) claim fails as a matter of law.  "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."  Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995).  However, "an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures.  The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."  Id.

To support her claim that Equifax produced an inaccurate report, Plaintiff relies on testimony by Ms. Sapere, an Equifax employee, that accounts belonging to someone other than Plaintiff appeared on Equifax's credit report because Plaintiff was the victim of identity theft.  Sapere Dep. at 25.  Equifax asserts that a fraudulent account on Plaintiff's credit report does not constitute evidence that the report is inaccurate.  The Court disagrees.  Maintaining credit information for a person other than Plaintiff in Plaintiff's credit report is one of the more obvious inaccuracies that can appear in a credit report.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Irrespective of the reporting inaccuracy, Equifax contends that its procedures are reasonable.  However, Equifax admits that it does not have a specific procedure in place to prevent information about a fraudulent account from going on a credit report even after being notified that an account may be fraudulent.  Id. at 82.  Rather, it has policies and procedures in place to assist consumers with removing false information once it appears on the report.  Id.  Equifax has not proved that its procedures are reasonable as a matter of law; therefore the Court denies Equifax's summary judgment motion on this claim.

4.   Reinvestigation: 15 U.S.C. § 1681i

Under 15 U.S.C. § 1681i(a)(1), if a customer disputes "the completeness or accuracy of any item of information contained in a consumer's file" then the credit reporting agency "shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file."  Equifax asserts that the record lacks substantial evidence to support Plaintiff's claim that Equifax violated this statute.  The Court disagrees.

In August, 2007, Plaintiff sent Equifax a letter disputing "inaccurate information in my credit file."  Sola Dec., Ex. D.  In the letter, Plaintiff told Equifax that "the account you are reporting is fraudulent.  I never opened it.  It apparently was opened by an identity thief."  Id.  She asked Equifax to "investigate this promptly, carefully and completely and delete this account from my credit report."  Id.  By the time Equifax received the letter, it had already deleted the Capital One 2004 Account because another credit reporting agency, Trans Union, had

notified Equifax that the account was fraudulent.  However, Equifax did not reinvestigate or delete Capital One "account reviews" listed in the credit report because, it asserts, Plaintiff only asked it to investigate the account, not "account reviews." Equifax's reading of Plaintiff's letter is unpersuasive.  A jury could reasonably conclude that Plaintiff asked Equifax to investigate and delete all items on her credit report relating to this account, including "account reviews."  Therefore, the Court denies Equifax summary judgment on this issue.

        5.    Disclosure to Consumer: 15 U.S.C. § 1681g

Title 15 U.S.C. § 1681g(a) provides that "every consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer . . . all information in the consumer's file at the time of request."  Equifax asserts that this claim fails as a matter of law because Equifax complied with Plaintiff's request for a credit report.  Further, Equifax asserts that it is not liable because it maintains and follows strict procedures to ensure compliance with the law.

Plaintiff argues that Equifax failed to provide her with "all information" in her file when it gave her the credit report in June, 2007.  In deposition testimony, Equifax agreed that "there were three inquiries in February 2007, that are not listed on the report that went to plaintiff in June of 2007."  Sapere Dep. at 190-191.  This admission suggests that Equifax did not accurately disclose all of Plaintiff's information.  Therefore, the Court denies Equifax summary judgment on the § 1681g claim.

United States District Court

For the Northern District of California

6.    Procedures for Furnishing Credit Report:
15 U.S.C. § 1681e(a)

Under 15 U.S.C. § 1681e(a), Equifax "shall maintain reasonable procedures designed to avoid" improper disclosures, and "limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." Pursuant to § 1681b(a)(3)(A), Equifax may furnish a consumer report to a person who it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer." Plaintiff argues that Equifax violated this statute when it provided Capital One with Plaintiff's credit report in October, 2004, and in March, 2008 for an account review. Equifax moves for summary judgment asserting that Plaintiff cannot prove a violation of this statute on either occasion.

a.    The October, 2004 Credit Report

Plaintiff argues that Equifax knew that Plaintiff's identity had been stolen from the Gayley Avenue address and that issuing a credit report in October, 2004 to Capital One for a credit card to be issued to the same address was impermissible under § 1681b(a)(3)(A). Equifax counters that, although it was aware that the 2003 Account was fraudulent, it had no information linking the fraud to the Gayley Avenue address and, at the time it issued a credit report to Capital One in October, 2004, it had no information that the 2004 Account also originated from the Gayley Avenue address. Equifax further states that "the Gayley Avenue address first reported on Plaintiff's credit file in February,

20

**United States District Court**
For the Northern District of California

2005."  Sapere Dec. ¶ 21.  Plaintiff does not present any evidence to counter Equifax's assertions that it did not associate the Gayley Avenue address with fraud on Plaintiff's account.  However, Plaintiff argues that Equifax's failure to maintain a record of the Gayley Avenue address in connection with the fraudulent 2003 Account was itself negligent.  Equifax's record-keeping policies may have contributed to the release of Plaintiff's credit report for an impermissible purpose.  Therefore, the Court denies Equifax's summary judgment motion on this claim.

b.    The March, 2008 Account Review

By March, 2008 Equifax had deleted the Capital One 2004 Account from Plaintiff's credit file.  However, Equifax argues that it had a permissible purpose to allow Capital One to review Plaintiff's credit file at that time because, before Capital One requested the review, Capital One certified to Equifax that it had a permissible purpose to make the review.  The Ninth Circuit has held, "Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law." <u>Pintos</u>, 5014 F.3d at 800.  The court continued that "a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use.  Blanket certification cannot eliminate all genuine issues of material fact with regard to Experian's liability." <u>Id.</u> at 800-801.  However, the court stopped short of requiring credit agencies to verify each credit report request individually.  <u>Id.</u> at 801 n.6. ("Even if Experian did not have to verify PCA's request for Pintos's credit report individually, §

1681e(a) still required proper verification of PCA generally").

As noted above, § 1681b(a)(3)(A) allows Capital One to obtain a credit report only if it "intends to use the information in connection with a credit transaction involving the consumer." Equifax knew the 2004 Account was closed at the time of the October, 2008 account review; thus it is not clear what "credit transaction" could have involved the consumer at that time. See Pintos v. Pacific Creditors Ass'n, 504 F.3d 792, 798-99 (9th Cir. 2007). There is a triable issue of fact as to whether Equifax is liable for allowing the March, 2008 review of Plaintiff's 2004 Account.

> 7.   Damages

Under 15 U.S.C. § 1681o, if any person negligently fails to comply with any requirements under the FCRA, Plaintiff may recover for "any actual damages sustained by the consumer as a result of the failure."  "The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation." Guimond, 45 F.3d at 1333.  A violation of the FCRA is actionable "even absent a denial of credit." Id.

Equifax argues for summary judgment on all claims because Plaintiff cannot show any injury or damages caused by Equifax. This argument fails.  The record shows that Plaintiff at least incurred costs for requesting her credit application and mailing her dispute letters to Equifax.  These out-of-pocket expenses constitute cognizable economic damages for FCRA purposes.

> 8.   Punitive Damages for Willful Conduct

Title 15 U.S.C. § 1681n allows for punitive damages if any person "willfully fails to comply with any requirement" of the

United States District Court
For the Northern District of California

FCRA.  The Supreme Court recently interpreted the term "willful" in the context of the FCRA to include "reckless" violations of the law.  _Safeco Insurance Co. v. Burr_, 127 S. Ct. 2201, 2209-2210 (2007).  The Court stated that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  _Id._ at 2215.

Equifax argues that there is no basis for a claim of punitive damages in this case.  The Court disagrees.  Plaintiff has carried her burden to show that there are material issues of fact as to whether Equifax acted in reckless disregard of the law.  The jury will determine whether Equifax negligently released Plaintiff's credit report, and whether that disclosure was in reckless disregard of the law.

II.  Plaintiff's Identity Theft Claim Against Capital One

The California Identity Theft Law provides, "A person may bring an action against a claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person."  Cal. Civ. Code § 1798.93.  Capital One moves for summary judgment asserting that it cannot be liable under this statute because it does not meet the statutory definition for a "claimant."

A claimant is defined in the statute as "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft."  Cal. Civ. Code § 1798.92.  The term claimant, as defined in the

statute, "reflects a present tense interest in a debt or attempt to collect." Satey v. JPMorgan Chase & Co., 521 F.3d 1087, 1092 (9th Cir. 2008). The statute does not apply to a "'claimant' who no longer has a claim at the time the suit is filed." Id. at 1093.

The operative date to determine whether Capital One is a claimant is "the time the suit is filed." Id. Plaintiff filed suit against Capital One on September 26, 2007, but that complaint did not include a cause of action under the § 1789.92. On December 7, 2007, Plaintiff filed her first amended complaint which included the § 1789.92 cause of action. Capital One argues that it was not a claimant on December 7, 2007 because it dismissed its Collection Action without prejudice on October 19, 2007. However, dismissing a lawsuit without prejudice is not the same as ceasing to have a "present tense interest in a debt." At no time before December 7 did Capital One relinquish its interest in the debt relating to the 2004 Account. Therefore, Capital One is a claimant under § 1798.92.

Capital One alternatively asserts that it cannot be held liable under the California Identity Theft Law because of the compulsory cross-complaint rule under California law. Under California Code of Civil Procedure § 426.30(a), "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." A "related cause of action" is a "cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences

United States District Court
For the Northern District of California

1  as the cause of action which the plaintiff alleges in his

2  complaint."  Cal. Civ. Proc. Code § 426.10(c).

3       As noted above, in May, 2007, Capital One sued Plaintiff in

4  state court in Contra Costa County seeking to collect on the 2004

5  Account.  Plaintiff filed an answer in that case, but did not file

6  a cross-complaint to dispute the 2004 Account.  Capital One asserts

7  that Plaintiff's failure to bring a claim under the California

8  Identity Theft Law in the cross-complaint in the prior collection

9  action bars the present claim.  The Court agrees.

10      Plaintiff's identity theft claim is a "related cause of

11  action" to Capital One's collection action.  Both causes of action

12  arise from the same series of transactions and occurrences -- the

13  credit card debt.  Either Plaintiff owes a debt to Capital One for

14  credit card charges, or Plaintiff is not liable for the debt

15  because she is the victim of identity theft.  Therefore, by not

16  filing the identity theft claim as a cross-complaint in the state

17  collection action, Plaintiff is barred from seeking redress for the

18  identity theft claim in this cause of action.  Thus, the Court

19  grants Capital One's summary judgment motion on this claim.

20  III. Plaintiff's Malicious Prosecution Claim Against Capital One

21      Capital One moves for summary judgment on Plaintiff's claim

22  that Capital One's state collection action was a malicious

23  prosecution.  Under California law, the tort of malicious

24  prosecution is "disfavored both because of its potential to impose

25  an undue chilling effect on the ordinary citizen's willingness to

26  report criminal conduct or to bring a civil dispute to court and

27  because, as a means of deterring excessive and frivolous lawsuits,

28  it has the disadvantage of constituting a new round of litigation

itself." <u>Zamos v. Stroud</u>, 32 Cal. 4th 958, 966 (2004) (internal citations and quotations omitted). To prevail on a malicious prosecution claim, Plaintiff must establish that Capital One's state collection action against her: "(1) was commenced by or at the direction of the defendant and was pursued to legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." <u>Id.</u> at 965.

Capital One argues that the state collection action did not terminate in Plaintiff's favor because Capital One dismissed the action without prejudice. "Where a proceeding is terminated other than on its merits, the reasons underlying the termination must be examined to see if it reflects the opinion of either the court or the prosecuting party that the action would not succeed." <u>Oprian v. Goldrich, Kest & Assoc.</u>, 220 Cal. App. 3d 337, 343 (1990). "The focus is not on the malicious prosecution plaintiff's opinion of his innocence, but on the opinion of the dismissing party." <u>Robbins v. Blecher</u>, 52 Cal. App. 4th 886, 893 (1997). "Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact." <u>Ross v. Kish</u>, 145 Cal. App. 4th 188, 198 (2006). Capital One asserts that it dismissed the state collection action for "business reasons." However, the "circumstances surrounding the dismissal of the case indicate a concession on the part" of Capital One that "the claim lacked merit." <u>Id.</u> The Court concludes that there is a triable issue of fact as to the circumstances of the termination.

In the probable cause inquiry, the Court makes "an objective determination of the 'reasonableness' of the defendant's conduct,

26

United States District Court
For the Northern District of California

i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." Sheldon Appel Co. v. Albert & Oviker, 47 Cal. 3d 863, 878 (1989). "Probable cause requires evidence sufficient to prevail in the action or at least information reasonably warranting an inference there is such evidence." Puryear v. Golden Bear Ins. Co., 66 Cal. App. 4th 1188, 1195 (1998). Capital One argues that it had probable cause to pursue its collection action because Plaintiff never provided it with a "written statement that the debtor claims to be the victim of identity theft with respect to the specific debt being collected by the debt collection." Cal. Civ. Code §§ 1788.18(a)-(b). The written statement contemplated by § 1788.18(b)(3) must contain specific information identifying the debtor and describing the identity theft. However, the requirement to provide this written statement pertains to consumer claims only under the Rosenthal Act. It is not a precondition for a malicious prosecution claim against a debt collector. Further, at no point until several weeks after Capital One sued Plaintiff in the collection action did Capital One request this information. Therefore, Capital One did not have sufficient evidence to reasonably warrant an inference that it would prevail in the action. The Court concludes that Capital One did not have probable cause to sue Plaintiff in the state collection action.

   "'The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Sheldon Appel, 47 Cal.3d at 874). One California Court of Appeal

27

United States District Court
For the Northern District of California

explained that:

> malice is present when proceedings are instituted
> primarily for an improper purpose. Suits with the
> hallmark of an improper purpose are those in which:
> (1) the person initiating them does not believe that
> his claim may be held valid; (2) the proceedings are
> begun primarily because of hostility or ill will;
> (3) the proceedings are initiated solely for the
> purpose of depriving the person against whom they are
> initiated of a beneficial use of his property; (4) the
> proceedings are initiated for the purpose of forcing a
> settlement which has no relation to the merits of the
> claim.

Sierra Club Found. v. Graham, 72 Cal. App. 4th 1135, 1157 (1999).

"Malice is usually a question of fact for the jury to determine.

Summary judgment on the basis of lack of malice is nonetheless

appropriate when there is no evidence from which a reasonable fact

finder could conclude that the defendant pursued the underlying

action with malice." Estate of Tucker, 515 F.3d at 1030 (internal

citation omitted).

Here, Plaintiff has presented evidence from which a reasonable

fact finder could conclude that Capital One pursued the underlying

state collection action with malice. Plaintiff notified Capital

One as early as December, 2005 that she was the victim of identity

theft and that the 2004 Account was fraudulent. Nevertheless,

Capital One sent the 2004 Account to a collection agency two

separate times, once in February, 2006, and then again in July,

2006. On both occasions the collection agency returned the account

back to Capital One concluding that the account might be

fraudulent. It wasn't until March 21, 2007 that Capital One

initiated its own fraud investigation. Despite noting several

indicators that the 2004 Account was fraudulent, such as multiple

signatures on the 2004 Account not matching and payments from

**United States District Court**
For the Northern District of California

multiple people, not including the ostensible debtor, Capital One concluded that the claim of fraud was invalid.  Less than a week after this determination, Capital One sued Plaintiff in state court to collect on the 2004 Account.  In sum, there is a triable issue of fact as to whether Capital One initiated its state collection action with malice.  Therefore, the Court denies Capital One's summary judgment motion on the malicious prosecution claim.

CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment (Docket No. 28 in Case No. 08-2972), and grants in part Defendant Capital One's motion for summary judgment and denies it in part (Docket No. 106 in Case No. 07-4980).  The Court denies Defendant Equifax's motion for summary judgment (Docket No. 103 in Case No. 07-04980).  Plaintiff may proceed with her claim against Capital One for negligent non-compliance with the FCRA and malicious prosecution, and with her claim against Equifax for negligent and willful non-compliance with the FCRA.  Within two weeks of the date of this order, Plaintiff must file a consolidated complaint clarifying which of Defendants' acts fall under which cause of action.  Nothing else may be changed or added.

IT IS SO ORDERED.

Dated: 12/19/08

CLAUDIA WILKEN
United States District Judge